NOT DESIGNATED FOR PUBLICATION

No. 126,739

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONNA HUFFMAN,
*Appellant,*

v.

SLOAN, EISENBARTH, GLASSMAN, MCENTIRE, AND JARBOE, L.L.C.,
and STEPHEN LANTERMAN,
*Appellees.*

MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed.

*Donna L. Hufffman*, appellant pro se.

*David J. Welder*, of Norris Keplinger Hicks & Welder, LLC, of Leawood, for appellees.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM:  Donna Huffman filed a lawsuit against her former attorney, Stephen Lanterman, and his firm, Sloan, Eisenbarth, Glassman, McEntire, and Jarboe, L.L.C., (Defendants), raising claims of legal malpractice, breach of contract, violations of the Kansas Consumer Protection Act (KCPA), and emotional distress. The district court granted a motion for summary judgment for Defendants, while also striking Huffman's untimely motion for partial summary judgment. Huffman appeals. Finding no error, we affirm.

1

In June 2011, Huffman was injured when her vehicle was hit by a cement truck being driven by an employee of Meier's Ready Mix. Huffman—who was a licensed attorney at the time—filed a personal injury suit on her own behalf, as well as her then-boyfriend Craig Reinmuth and minor daughter Laurrel Huffman. Huffman raised claims based in negligence and various intentional torts, while Reinmuth and Laurrel raised loss-of-consortium claims. At some point, Huffman retained Stephen Lanterman, who was associated with the Sloan Law Firm, to prosecute the case.

Throughout the proceedings and leading up to trial, Huffman communicated with Lanterman and others about the case and proposed courses of action. Before trial, the district court entered partial summary judgment on the loss-of-consortium claims, meaning only Huffman's claims proceeded to trial. After a nine-day jury trial, the jury deliberated and awarded damages of $809,491 but assessed 25% fault to Huffman, resulting in a net judgment of $607,118.25. Huffman appealed the verdict, representing herself, which this court affirmed in a decision filed in January 2021. See *Huffman v. Meier's Ready Mix, Inc.*, No. 120,971, 2021 WL 219235, at *1-13 (Kan. App. 2021) (unpublished opinion).

In October 2019, while the appeal was pending, Huffman filed this action against Defendants. She alleged a litany of failures in their representation, including, but not limited to, missing filing deadlines and requesting unauthorized extensions, mishandling of experts, failing to properly investigate or pursue discovery, lack of proper preparation for trial, misrepresentations both before and during trial, violating a gag order by submitting her confidential medical records to the court file rather than to the judge directly, mistreating her in various ways, and abandonment. Huffman's petition included the following "Causes of Actions & Damages":

"During the course of representation and continuing, the foregoing examples of actions and inactions demonstrate malpractice, breach of fiduciary duty, misrepresentations, infliction of emotional distress, and violations of the Kansas Consumer Protection Act each of which resulted in damages to Plaintiffs.

"The character of the conduct was negligent, intentional, willful, knowing or with reason to know, wanton, and at some times malicious."

Huffman filed an amended petition in December 2019 with more claims, including that Defendants "had a legal and equitable duty to the Plaintiffs which was breached during and after their representation of the clients by the actions and non-actions set out here. These actions and non-actions caused the Plaintiffs to be damaged in the common law and resulted in other statutory penalties." The amended petition also modified the "Causes of Action & Damages" to now include "breach of contract good faith and fair dealing" and further asserted a claim for "declaratory relief as to the breach of contract, the amounts due with set off for damages."

Huffman's amended petition further elaborated on the alleged KCPA violations, claiming that Defendants engaged in "deceptive acts and practices which aggrieve [Plaintiffs] by violating K.S.A. 50-626(b)(1)(A)(D) and (F), (b)(2), (b)(3), (b)(4), (b)(7), (b)(8), (b)(10)[.]" Continuing, the petition alleged that Defendants engaged in "unconscionable acts which resulted from overreaching, self-dealing, total disregard to the rights of Plaintiffs (including but not limited to appeal, to privacy, to timely prosecution of their claim, to competent representation, to the truth) and lack of bargaining power as acts and practices in violation of K.S.A. 50-627[.]" The petition further asserted the plaintiffs were each entitled to "enhanced penalties" under the KCPA.

After filing this action the case took on a tortured procedural history that we find unnecessary to outline here. The parties are aware of the facts related to that history and we will refer to them only as necessary to the issues presented.

3

Huffman has three overarching issues on appeal, even though she divides them into several subsets. We will address all three. First, did the district court err in granting Defendants' motion for summary judgment? Second, did the district court err in striking Huffman's motion for partial summary judgment as untimely? And third, did the district court abuse its discretion in imposing sanctions?

Before getting into the merits of the arguments raised by Huffman, Defendants urge this court to deny relief on each issue because her brief does not comply with Kansas Supreme Court rules. Defendants make a compelling case. Huffman's brief is disorganized making her arguments difficult to understand. Moreover, she cites the incorrect standard of review for most of her issues. She improperly includes references to facts alleged in various pleadings within her statement of facts, even though she cannot rely on these unsupported allegations to contest the district court's summary judgment ruling. Even so, this court can discern the issues and relative positions of the parties. Any failure in briefing that prevents us from considering issues raised will be noted.

*The district court did not err in granting Defendants' motion for summary judgment.*

Huffman broadly argues that the district court erred by granting Defendants' motion for summary judgment and prematurely disposing of all the claims raised in her petition.

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, the district court enters what is referred to as summary judgment. In reviewing that information, the district court is required to resolve all facts and reasonable inferences drawn from the

4

evidence in favor of the party against whom the ruling is sought. The party opposing summary judgment, here Huffman, must produce evidence to establish a dispute as to a material fact. Those facts must be material to the conclusive issue in the case. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

In reviewing a district court's factual findings, if we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. If not, we review the legal effect of undisputed facts de novo. 310 Kan. at 982.

Huffman, does not challenge the district court's determination that she failed to properly controvert the uncontroverted facts included in Defendants' motion for summary judgment. Supreme Court Rule 141(b) (2026 Kan. S. Ct. R. at 220) imposes specific requirements on a party opposing a summary judgment motion to state whether any of the movant's factual contentions are controverted or uncontroverted. Noncompliance with this rule gives the district court discretion to consider any uncontroverted facts as admissions. See *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 604, 738 P.2d 1246 (1987). Even on appeal, Huffman only contends that the Defendants' statements of uncontroverted facts in their summary judgment motion were "insufficient to conclude there is no genuine dispute of fact." In other words, she admits the facts included in Defendants' motion were uncontroverted; she simply disagrees with the legal conclusion that they were sufficient to decide the case as a matter of law.

Similarly, Huffman's brief is filled with references to facts referenced in her pleadings and response to Defendants' summary judgment motion. But the district court specifically explained in its summary judgment ruling that it had only considered portions of the record that were "properly cited in the parties' briefs" and that "[s]tatements of fact without precise references to the record are not considered by the court." In other words, the court found Huffman failed to properly present any evidence to support her claims or

to show a genuine dispute as to any material fact. Because Huffman does not attempt to challenge this determination at any point in her brief, we consider it to be abandoned. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (issues not briefed are waived or abandoned).

*The district court addressed all of Huffman's claims.*

Huffman first contests whether Defendants' motion for summary judgment addressed every claim alleged in her petition. She notes that one of the district court's uncontroverted facts was that "Plaintiffs' Amended Petition makes claims for breach of contract, malpractice, breach of fiduciary duty, misrepresentation, emotional distress, and violations of the Kansas Consumer Protection Act." Yet, she asserts that neither Defendants' motion nor the court's summary judgment ruling addressed "breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary by privacy violations, misrepresentations, or Mr. Lee's disparagement for example." Based on a review of the record, each claim raised by Huffman was incorporated in some way into the court's summary judgment ruling. Thus, she does not persuasively show she is entitled to relief on this point.

First, the district court's summary judgment ruling clearly found Defendants were entitled to judgment as a matter of law on Huffman's breach of contract claim. As for the "breach of duty of good faith and fair dealing," Kansas law recognizes that such a claim arises as an implied duty inherent in the terms of a contract. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 965, 298 P.3d 250 (2013). So, while the district court did not explicitly mention it as part of its discussion of Huffman's breach of contract claim, Huffman likewise did not properly present facts suggesting Defendants violated the duty of good faith and fair dealing.

Second, Huffman's assertion that the summary judgment ruling did not address "breach of fiduciary duty by privacy violations" is also mistaken. Huffman provides no legal authority showing that Kansas law recognizes a breach of privacy included in an attorney's fiduciary duties, although she may be referring to an attorney's ethical duty of confidentiality owed to their clients. See *State v. Gonzalez*, 290 Kan. 747, 759, 234 P.3d 1 (2010) (discussing overlap between duty of confidentiality and attorney-client privilege). The court mentioned this duty when ruling on Huffman's legal malpractice claim, finding that it would involve a standard of care beyond a juror's common knowledge and thus required expert testimony.

Third, the type of "misrepresentation" claim Huffman raised is unclear because she cites no relevant legal authority to explain the nature of her claim. Kansas law recognizes at least two causes of action that could include a form of misrepresentation. See, e.g., *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 936, 305 P.3d 622 (2013) (discussing elements of the tort of negligent misrepresentation); *Gerhardt v. Harris*, 261 Kan. 1007, 1018, 934 P.2d 976 (1997) (distinguishing "fraudulent misrepresentation" from negligent misrepresentation). The KCPA also includes within the scope of "[d]eceptive acts and practices" several types of misrepresentation, as well as a violation for "disparaging the property, services or business of another." See K.S.A. 50-626(b)(1), (4), (7). Even if Huffman's amended petition alleged misrepresentations and disparagement as types of deceptive acts or practices, the district court also addressed such claims in its summary judgment ruling by concluding that she came forward with no evidence to support her KCPA violation claims.

In short, Huffman fails to show that any of the claims raised in her petition were left unaddressed by the district court's summary judgment ruling.

*The district court did not err in finding that expert testimony was necessary to establish all of Huffman's claims.*

Huffman's second overarching issue concerns the district court's conclusion that Defendants were entitled to summary judgment due to her failure to timely designate any expert witnesses. She contends the court overly relied on this omission to conclude that the allegations of legal malpractice in her amended petition fell beyond the common knowledge of jurors. Likewise, Huffman goes on to argue that the court erroneously determined that expert testimony was necessary to establish each of her other claims.

But upon review, the district court correctly found that the lack of expert testimony was fatal to her legal malpractice claims. And contrary to her assertions, the district court did not find that Defendants were entitled to judgment as a matter of law on all her claims solely because of her failure to designate any experts. Although the court found some claims were intertwined with legal malpractice, the court also independently addressed each of Huffman's claims and found that she failed to present evidence necessary to establish a genuine dispute of material fact to overcome summary judgment. Each claim will be addressed in turn.

*A. Legal Malpractice*

Huffman's sole argument on the legal malpractice claim seems to be that the district court erroneously concluded her claims required more than common knowledge. As support, Huffman directs this court's attention to the pattern jury instruction defining the duty a lawyer owes to their client. She emphasizes that the pattern instruction for a lawyer's duty states:  "A lawyer's duty to a client is to use the learning, skill and care that a reasonably competent lawyer would use in similar circumstances. In using this learning, skill and care, the lawyer *must also use ordinary care and diligence*." (Emphasis added.) See PIK Civ. 4th 123.40. She also correctly points out that expert testimony is generally

8

required to prove the professional standard of care for an attorney, but that Kansas law recognizes a "common knowledge exception." *Bowman v. Doherty*, 235 Kan. 870, 879, 686 P.2d 112 (1984).

To be clear, there is no dispute that Huffman failed to file an expert witness disclosure by the deadline, so that fact is settled. Thus, the question under the summary judgment standard of review is whether Huffman has come forward with evidence to establish a dispute of material fact about any of her legal malpractice claims that could be established solely through the common knowledge of jurors. The two examples she provides in her brief relate to: (1) Defendants missing filing deadlines to challenge expert witnesses, and (2) Defendants breaching confidentiality by violating a gag order. Although she may be correct that these actions could fall within the common knowledge exception, the problem is that these allegations lack any evidentiary support because she only references the factual allegations included in her amended petition. *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 556, 205 P.3d 1245 (2009) ("Once the movant has discharged [its] initial burden, '[t]he party opposing summary judgment . . . has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.' *Hurlbut v. Conoco*, 253 Kan. 515, 520, 856 P.2d 1313 [1993].").

Put simply, without evidence, Huffman necessarily could not establish a genuine dispute of material fact exists to show that Defendants committed legal malpractice in ways that fell within the common knowledge of jurors. Thus, the district court correctly found that Defendants were entitled to summary judgment as a matter of law on Huffman's legal malpractice claims because she failed to timely designate any experts.

*B. Breach of Contract*

Huffman's argument on this point is essentially a conclusory statement that the court committed plain error, but she provides no relevant legal authority to support her argument. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue). She asserts that "[t]his Court is aware experts required for breach of contract or breach of duty of the good faith and fair dealing," but then acknowledges that the district court did not find that an expert was required to establish a breach of contract. Indeed, the court found summary judgment was appropriate because Huffman failed to come forward with any evidence about the terms of the contract, so it necessarily could not determine whether Defendants breached that contract. Legal malpractice is only mentioned to the extent that Huffman's breach of contract claim argues that Lanterman breached a professional duty as an attorney. In short, we find Huffman fails to show the district court erred in granting summary judgment for the Defendants on her breach of contract claim because she provides no relevant authority or meaningful analysis for overturning this finding.

*C. Breach of Fiduciary Duty, Breach of Confidentiality, and Violation of GAG Order*

Like the previous claim, Huffman simply makes a conclusory argument that experts are not required to determine if an attorney violates a court order and that the district court's ruling was plain error. On this point, the district court found that Huffman's breach of fiduciary duty claim was intertwined with her legal malpractice claim because Lanterman's obligation to act in good faith of Huffman's interests is inseparable from his responsibilities as her attorney. The court was unaware of any authority—and Huffman presented none—that would impose a higher fiduciary duty on an attorney than the attorney-client relationship. But because Huffman's argument lacks

10

any supporting authority or meaningful analysis, we find Huffman fails to show the district court erred in granting summary judgment on these claims.

*D. Other Claims*

Contrary to Huffman's argument, the absence of expert testimony in no way factored into the resolution of the district court's summary judgment rulings on her emotional distress or KCPA claims. The district court found that Huffman's emotional distress claim necessarily failed because she failed to come forward with evidence of any physical injury caused by Defendants, nor did she show that Defendants acted toward her in a willful or wanton manner or with the intent to injure.

The district court also never mentioned the absence of expert testimony with respect to Huffman's KCPA claims. The court found that her KCPA claims failed because she presented no evidence of deceptive or unconscionable acts by Defendants. Thus, the court found there were no issues of material fact that could lead to such a finding, even when all facts and reasonable inferences are resolved in Huffman's favor. Huffman also briefly makes similar arguments about her "misrepresentation" claims, which as discussed above were not specifically mentioned in the court's ruling, but would still fall under the court's conclusion that Huffman provided no evidence of deceptive acts to a KCPA violation. See K.S.A. 50-626(b)(1), (4) (recognizing forms of misrepresentation as actionable under KCPA definition of "[d]eceptive acts and practices").

Put simply, Huffman offers nothing that would support overturning the district court's conclusions that she failed to come forward with any evidence to show a genuine dispute of material fact to overcome Defendants' summary judgment motion.

*The district court made sufficient findings of fact and conclusions of law to support its ruling.*

Huffman argues the district court's summary judgment ruling did not include adequate findings of fact and conclusions of law as required under K.S.A. 60-252. The crux of her argument on this issue seems to be that the district court did not sufficiently explain why expert testimony was required to establish each of her claims.

While Huffman filed a motion for additional findings of fact and conclusions of law after the district court's summary judgment ruling, these points were never raised in that motion. Moreover, she is simply mistaken that the district court concluded Defendants were entitled to summary judgment solely because she failed to timely designate any experts. As explained above, the court found some of Huffman's claims were intertwined with legal malpractice, but also independently addressed each of Huffman's claims and found that she failed to present evidence necessary to show a genuine dispute of material fact to overcome summary judgment.

Because we find that the district court properly granted Defendant's summary judgment motion, we need not address Huffman's claim that the district court abused its discretion in striking Huffman's motion for partial summary judgment as untimely.

*The district court did not abuse its discretion by granting Defendants' motions for sanctions.*

Kansas appellate courts review the question of whether sanctions were properly imposed for discovery violations under an abuse of discretion standard of review. *Schoenholz v. Hinzman*, 295 Kan. 786, 798, 289 P.3d 1155 (2012). As on the previous issue, judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). And, again, as the party asserting the

district court abused its discretion, Huffman bears the burden of showing such abuse of discretion. 319 Kan. at 400.

Huffman challenges the district court's imposition of sanctions against her in the underlying proceedings, but her argument strains credulity. As best as can be understood, Huffman seems to argue that any sanctions imposed on her in the underlying proceedings should be reversed because an incomplete transcript deprived her of the opportunity to seek appellate review. We disagree for several reasons.

First, Huffman cites the incorrect standard of review in her brief. She incorrectly cites *State v. Fisher*, 283 Kan. 272, 286, 154 P.3d 455 (2007), to assert this court should review the issue as a mixed question of law and fact. But *Fisher* dealt with a suppression ruling in a criminal case and has no relevance to the issues presented here. Given Huffman's complete disregard of the appropriate standard of review, this court could simply conclude she failed to meet her burden and affirm the sanctions.

But as Defendants also note, Huffman never actually identifies the ruling she is attempting to challenge. In her brief, she purports to challenge the district court's imposition of sanctions, asserting that a hearing conducted in May 2021 "resulted in financial sanctions." But the transcript for that hearing shows the district court was considering two pending requests for sanctions filed by Defendants that addressed Huffman's failure to appear for a deposition and for failing to comply with a discovery order, then took both requests under advisement at the conclusion of the hearing. The journal entry for the hearing—which Defendants included as an exhibit to their motion objecting to Huffman's proposed stipulation of facts in an attempt to recreate the full transcript of the hearing—also shows that the court took both motions under advisement. Further review of the record shows that the court ultimately granted both requests, ordering Huffman to pay $1,785 total to Defendants in attorney fees after a hearing in

13

February 2022. But Huffman discusses none of this procedural history in her brief, so it is unclear which sanctions she is seeking to overturn.

Even assuming Huffman intended to challenge both sanctions, her brief includes no relevant legal authority to support her position. She mentions language in K.S.A. 20-301 stating that the district court is "a court of record," presumably to argue that accurate transcripts of hearings are necessary to ensure meaningful appellate review. But then she makes an illogical leap: that the appropriate remedy for an incomplete transcript of a hearing at which sanctions were merely considered should result in the reversal of those sanctions. In discussing this issue, Huffman also references the fact that the district court was also considering her pending motion to compel discovery at the May 2021 hearing. But that is an entirely separate matter, for which she also provides no standard of review or any meaningful analysis. Put simply, we find that Huffman has abandoned her challenge to the sanctions because she failed to provide any relevant legal authority to support overturning the district court's rulings.

Affirmed.